# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4514 | **DATE** | 8/22/2001 |
| **CASE TITLE** | Brown vs. Alliant Foodservice Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant in its entirety Defendant Alliant's motion (Doc 9-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | **AUG 2 3 2001** | |
| ✓ | Docketing to mail notices. | | | date docketed | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| | | | FILED FOR DOCKETING 01 AUG 22 PM 3: 34 | | |
| SCT | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

Document Number

19

DOCKETED
AUG 2 3 2001

JACQUELINE BROWN, )
)
Plaintiff, )
)
vs. )                00 C 4514
)
ALLIANT FOODSERVICE, INC., )
)
Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is the motion for summary judgment of Defendant Alliant Foodservice, Inc. ("Alliant"). For the reasons set forth below, we grant the motion.

## BACKGROUND

In 1990, Alliant hired Jacqueline Brown ("Brown") as a financial analyst in its Deerfield, Illinois headquarters. Brown, an African American woman, holds a Master of Business Administration degree from Duke University's Fuqua School of Business and a Bachelor of Science degree in mechanical engineering from Duke University. As a financial analyst for Alliant, Brown helped consolidate data, performed budget analysis, and assisted with planning and analysis of financial statements. In February 1991, Brown agreed to relocate to San Diego, California to work as a financial analyst after having been told by Freida Ireland ("Ireland"), a supervisor for Alliant's western division, that it would be a good opportunity for advancement. In that position, she acted as the financial representative of Howard Poole ("Poole"), Alliant's general

19

manager for southern California. Her duties included consolidating the budgeting and day-to-day financial activities of the company's operations in San Diego, City of Industry, Carson, and Santa Ana. In addition, Brown worked on ad hoc projects to determine the financial state of the company's operations in southern California.

Approximately one year later, Alliant eliminated Brown's position, but retained Brown to handle ad hoc financial projects. She continued to receive annual pay increases and report to Poole. In January of 1993, Alliant assigned Brown to a financial analyst position for its dietary products division in southern California. Brown received a pay increase shortly after taking the job. While working in southern California, Brown claims she was denied a position as assistant controller for the company's City of Industry, California region. Poole, the general manager for southern California at the time, told Brown that she would not be considered for the job and offered no further explanation. The position was filled prior to 1994.

In January of 1994, Alliant transferred Brown back to Deerfield to work as a regional financial analyst for the company's south division, which included Austin, Houston, and Dallas, Texas, as well as Jackson, Mississippi. Brown received a raise at the time of transfer. Her supervisor reported to Ireland, who had become vice president of financial operations.

In mid-1995, Brown became aware of an opening for the position of vice president of finance for Alliant's Houston market. Brown claims to have informed Ireland of her interest in the position only to be told that she needed management and credit experience first. Brown believes she was improperly denied the position because of her race or sex. The position was filled in 1995. According to Brown, Ireland

suggested that Brown work as an assistant controller in Phoenix for the summer of 1995 to gain supervisory and accounting experience, and she did so from July through September of 1995. In November of 1995, Alliant offered Brown a temporary position as an auditor in Salt Lake City, which she says she accepted because Ireland told her it would help her move into a vice president of finance position. Brown remained in that position for approximately one month, while continuing to perform her duties as a regional financial analyst in Deerfield. Shortly thereafter, in January of 1996, Brown was promoted to the position of manager of Alliant's forward warehouse system.

In the summer of 1997, Brown consulted with Rick Pfeiffer ("Pfeiffer"), a human resources manager in Deerfield, about moving into a general management position. Pfeiffer arranged assessment interviews for Brown to identify her strengths and weaknesses. According to Brown, the interviewers identified as a weakness her willingness to discuss race- and sex-based barriers. Pfeiffer apparently recommended that Brown seek out sales and marketing experience via finance positions.

At least twice in 1997, Tracy Britton ("Britton"), vice president of finance for Alliant's southwest division, informed Brown of job openings in finance positions. Britton states that Brown said she was not interested and was happy where she was; according to Brown, she declined to pursue the positions because she was unwilling to take a pay cut. During this period of time, Brown asserts she was denied a major accounts position in Deerfield because of her race and sex. Brown can recall neither the specific position involved, nor whether she formally applied for it. According to Brown, the position was filled in late 1997. Brown also alleges she was discriminatorily denied a position as vice president of finance for Atlanta, Georgia

when the position became vacant in 1997. Brown expressed interest and claims she was considered for the job but was not hired. In 1998, Alliant hired Chris Hennessy, a white male, to fill the position. At that time, he had a bachelor's degree in finance and accounting, and prior experience as an assistant controller with Alliant.

In December of 1998, Alliant announced that it was eliminating its forward warehouse system as part of a reduction in force ("RIF") and invited all affected employees to apply for any open positions with Alliant. Brown was informed that her position was being eliminated and that her last day of employment would be April 2, 1999. At about this time, late in 1998, Alliant was seeking to fill the position of vice president of finance for its Denver district, and Brown alleges that she was not hired as vice president of finance for Denver due to her race and sex. Britton, vice president of finance for Alliant's southwest division, was primarily responsible for filling the position. Larry Deans, executive vice president of human resources, and Joan Ryan ("Ryan"), Alliant's chief financial officer, were also involved in deciding who to hire for the position. Britton sent a memo asking regional vice presidents, including Ireland, whether they knew of any qualified candidates, but received no response.

Brian Sage ("Sage"), a white male who had previous experience with one of Alliant's competitors in positions equivalent to and higher than the Denver position Alliant was seeking to fill, applied for the position. After being interviewed by Britton, Deans, and Ryan, Sage received an offer from Britton. Upon learning that the position had been available and filled, Brown asked Britton why she was not considered for the position. Britton says she did not consider Brown for the position because Brown had not been interested in similar positions in other areas and because she did not know

Brown's position had been eliminated. Britton adds that she considered Sage more qualified for the position and would have hired Sage even if Brown had applied.

Brown also alleges that once the RIF went into effect, Alliant retained white males by transferring them or redefining their positions and did not do so for her because of her race or sex. In her complaint, Brown specifically mentions Jeff Williamson ("Williamson"), Wil Aslan ("Aslan"), and William Decoulos ("Decoulos"). The RIF eliminated Williamson's position as systems integration finance supervisor on Alliant's business integration team. Ireland then hired Williamson, who has an undergraduate degree in industrial engineering, as manager of system distribution and processes based upon his work experience with Alliant and his technical expertise. According to Marianne Zorich ("Zorich"), Alliant's director of human resources in Deerfield, the decision to select Williamson for the position in which he was retained was not in any way related to his race or his sex. Brown contends that she was more qualified than Williamson for the position because 1) she had comparable experience in business integration and systems conversion with Alliant, 2) Brown's degree in mechanical engineering is superior to Williamson's degree in industrial engineering, and 3) Brown had an MBA whereas Williamson did not.

Like Williamson, Aslan lost his position with the business integration team when the RIF eliminated it. Aslan applied for and was selected by Zorich and Ryan to fill the position of director of finance for category management. From 1988 through 1996, Aslan was controller and market vice president for Alliant's Seattle district. In 1996 and 1997, he was vice president of finance for Alliant's west division. Then, in 1997 and 1998, he was vice president of pricing and business development for the southwest

division. In July 1998, Aslan moved to Deerfield as the general manager of business integration. According to Zorich, the decision to hire Aslan was not related to his race or his sex. Brown contends she was more qualified to fill the position of director finance for category management due to her work in the forward warehouse system.

As for Decoulos, Alliant contends that the RIF expanded, rather than eliminated, his position. As a result, his pay level increased and his title changed to manager of distribution methods and technology. In March 1996, Alliant had hired Decoulos as manager of warehouse methods and technology—a position one salary level above Brown's position as manager of the forward warehouse system. Brown claims that Decoulos' position was, in fact, eliminated, and that he received more favorable treatment than her when he was hired for his new position.

Except for the initial financial analyst position in Deerfield, Brown did not formally apply for any of the jobs she held with Alliant, nor did she formally apply for any posted positions with Alliant between December of 1998 and her last day of employment. However, Alliant only posts locally the lower-salaried job openings. For higher level positions, Alliant seeks applicants mainly through word of mouth from both inside and outside the company.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the record in the light most favorable to the non-moving party and drawing all reasonable inferences from the record in that party's favor, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c). In employment discrimination cases, where issues of intent and credibility are crucial,

- 6 -

this standard is applied with added rigor.  See Sarsha v. Sears, Roebuck, & Co., 3 F.3d. 1035, 1038 (7th Cir. 1993); Mills v. Health Care Servs. Corp., 171 F.3d. 450, 454.(7th Cir. 1999).

The moving party bears the initial burden of "showing"—that is, pointing out to the court —that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The moving party may do so with or without supporting affidavits and need not produce evidence establishing the absence of a material fact. See id. at 324.  Where the non-moving party will bear the burden of proof at trial on a genuine issue of material fact, that party may not rest solely on the pleadings to avoid summary judgment, but must produce specific evidence to support its contention that a triable issue of material fact does in fact exist.  See id. at 324-25.  That evidence, however, need not be admissible at trial, and may include affidavits, depositions, answers to interrogatories, and admissions on file.  See id. at 324.

Without such evidence supporting an essential element of the non-moving party's case on which that party will carry the burden of proof at trial, there can be "no genuine issue as to any material fact," and the absence of such proof necessarily renders all other facts immaterial.  See id. at 322-23.  In such a situation, the plain language of Rule 56(c) mandates the entry of summary judgment.  See id.

## DISCUSSION

### A. Brown's Claims for Failure to Promote

#### 1. Legal Standard

Brown alleges she was denied advancement to various positions because of her race and sex in violation of Title VII of the 1964 Civil Rights Act.  See 42 U.S.C.

§ 2000e-2(a)(1). Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" because of that person's race or sex. Id. A plaintiff in a Title VII case may meet her burden of persuasion in one of two ways. See Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995); Kirk v. Federal Prop. Mgmt. Corp., 22 F.3d 135, 138 (7th Cir. 1994). Under the first approach, a plaintiff may "directly" establish that racial or sex discrimination motivated the defendant's employment action. Perdomo, 67 F.3d at 144; Trans World Airlines,Inc. v. Thurston, 469 U.S. 111 (1985). Under the second approach, a plaintiff may rely on the familiar burden-shifting method set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Because Brown has not introduced direct evidence of discrimination, she must rely exclusively on the McDonnell-Douglas burden-shifting framework.

Under that framework, a plaintiff carries the initial burden of establishing a prima facie case of discrimination. See McDonnell-Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253. She must prove, by a preponderance of the evidence, "that she applied for an available position for which she was qualified, but was rejected under circumstances that give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253. Doing so creates a presumption that the employer unlawfully discriminated against the employee. See id. The burden then shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the employment action in question. See McDonnell-

Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253. The defendant's burden is not the burden of persuasion, however, and it is sufficient that the defendant introduce admissible evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff. See Burdine, 450 U.S. at 253.

If the defendant carries its burden and rebuts the presumption of discrimination created by the plaintiff's prima facie case, the plaintiff must then demonstrate that the employer's stated reason for the alleged discriminatory action is pretextual. See id. at 256. The plaintiff may do so directly by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's explanation is not credible, thereby giving rise to an inference that the employer's motivation for the employment action was discriminatory. See id.; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). At all times, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. See Burdine, 450 U.S. at 253.

2. *Untimely Claims*

Title VII requires a charge of discrimination to be filed within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e). A plaintiff's failure to timely file a charge with the EEOC bars any subsequent civil rights suit in the courts. See Snider v. Belvidere Township, 216 F.3d. 616, 618 (7th Cir. 2000) (citing Terry v. Bridgeport Brass Co., 519 F.2d 806, 808 (7th Cir. 1975)). Brown filed charges with the EEOC on April 27, 1999. According to Title VII, Brown would not be able to recover for any allegedly discriminatory employment actions that occurred

before June 26, 1998. Four of the five positions to which Brown claims to have been denied advancement were filled prior to June 26, 1998.

In order to avoid the consequences of this rule, Brown invokes the continuing violation doctrine. That doctrine allows plaintiffs to seek relief for a time-barred act by linking it with an act that falls within the limitations period. See Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). Where the plaintiff charges that an employer has covertly followed a practice of discrimination, the doctrine applies if the plaintiff can establish that the defendant's acts were "related closely enough to constitute a continuing violation." Selan, 969 F.2d at 565; Stewart v. CPC Int'l, Inc., 679 F.2d 117 (7th Cir. 1982).

Brown, however, cannot avail herself of this doctrine to save her claim. In the first place, her brief fails to elaborate on why the continuing violation doctrine applies to her case. Rather, she rests on the mere mention of the doctrine. More is expected of a litigant at the summary judgment stage. Specifically, Brown is obligated to set forth specific evidence in support of her contention that the continuing violation doctrine applies. See Celotex, 477 U.S. at 374-75. Because she has failed to do so, the continuing violation doctrine must fail.

In the second place, our independent review of the record before us discloses no facts that would support the application of the continuing violation doctrine. The Seventh Circuit has recognized three types of continuing violations:

> where the exact day of the violation is difficult to pinpoint because the employer's decisionmaking process takes place over a period of time; where the employer has a systematic, openly espoused policy alleged to be discriminatory; and where the employer's discriminatory conduct is so covert that its discriminatory character is not immediately apparent.

Place v. Abbott Labs., 215 F.3d 803, 808 (7th Cir. 2000). None of these applies to the case at bar. The exact dates by which the positions were filled are easy to pinpoint, and both sides have done so. No existing facts indicate that Alliant systematically and openly espoused a discriminatory policy. Nor does anything appear to be "covert" about Alliant's conduct in filling the positions. Indeed, the facts before us point to the opposite conclusion. These four allegations represent distinct, discrete instances of allegedly discriminatory failure to promote, sufficient both in time and number to have put Brown on notice of the need to assert her rights.

Simply put, Brown has failed to set forth facts supporting the application of the continuing violation. Accordingly, the continuing violation doctrine cannot save her race discrimination claim regarding the four positions filled prior to June 26, 1998. Thus, those claims are barred by the 300-day rule, and Brown may recover only with respect to the alleged discrimination concerning the position of vice president of finance in Denver and Alliant's RIF. We turn next to a discussion of the Denver position.

### 3. Vice President of Finance in Denver

Under the McDonnell-Douglas burden-shifting approach, a plaintiff who alleges a Title VII violation for failure to promote because of discrimination on the basis of race or sex must establish a prima facie case by a preponderance of the evidence. See Burdine, 450 U.S. at 252-253. To establish a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate that 1) she is a member of a protected class; 2) she applied for and was qualified for the promotion sought; 3) the employer

- 11 -

rejected her for the promotion; and 4) either the position remained open and the employer continued to seek applicants from persons similarly qualified, or the employer granted the promotion to, or hired for the position, a person with similar or lesser qualifications whose race or sex is different than the plaintiff's. See Perdomo, 67 F. 3d at 144. The parties do not dispute that Brown satisfies the first and third element of a prima facie case for discrimination on the basis of race or sex. The second and fourth elements, by contrast, are hotly contested.

*a. Whether Brown "Applied" for the Denver Position*

Alliant argues that Brown cannot establish a genuine issue of material fact as to the second element because Brown never applied for the Denver position. However, the McDonnell-Douglas framework is meant to be flexible, McDonnell-Douglas, 411 U.S. at 802 n.13, and where an employer uses a promotion system in which managers seek out employees for promotion rather than solicit applications or post job openings, a non-applicant plaintiff can establish a prima facie case by showing that she would have applied for the position had she known it was open. See Box v. A & P Tea Co., 772 F.2d. 1372, 1376-1377 (7th Cir. 1985).

In the case at bar, Alliant fills its higher-level positions by having managers seek out applications from employees who have previously expressed interest in a particular position or by directly promoting or transferring employees qualified for the position. Although Alliant apparently posts some job openings locally, their system does not inform potential employee applicants in other locales of opportunities for advancement within the company. Given the evidence in the record and the policy justification for expanding the application element in failure to promote cases—to ensure judicial

recourse for employees who were unaware of an opportunity for promotion —the less stringent standard for satisfying the application element is appropriate.

Therefore, to avoid summary judgment, Brown must show there is a genuine issue of material fact as to whether she would have applied for the Denver position had she known, or been in a position to know, the job was open. See Box, 772 F.2d at 1377. We find evidence in the record from which a reasonable trier of fact could conclude that Brown would have applied for the Denver position had she known it was available. Upon discovering the position had been filled, Brown inquired as to why she had not been considered for it. That action permits at least an inference that she would have applied had she known the position was available. Whether the inference is a worthy one is normally a jury question. Furthermore, although Britton had notified Brown in the past of available finance positions and Brown had expressed a lack of interest, Brown explained in her deposition that those positions had entailed a pay cut.

Moreover, the record indicates Brown took steps to put herself in a better position to move into such a job in the future. During her deposition, Brown recalled that when she approached Ireland about applying for the position of vice president of finance in Houston in 1995, Ireland informed Brown that she needed more supervisory and credit experience. Brown swiftly set about seeking out and accepting positions that would give her supervisory and accounting experience. She also accepted a management position in 1996 and sought advice about pursuing her career goals from Rick Pfeiffer, a human resources manager who, according to Brown, suggested she pursue management positions in finance.

This evidence, hinging as it does on issues of credibility and fact-finding, raises a genuine issue of material fact. Viewing the record in the light most favorable to Brown, a reasonable fact finder could conclude that Brown would have applied for the position in Denver had she known it was open. Therefore, we cannot grant summary judgment on the ground that Brown is unable to establish a genuine issue of material fact with respect to the application element of a prima facie case for discriminatory failure to hire.

### b. *Whether Sage Had Similar or Lesser Qualifications*

To satisfy the final element of discriminatory failure to promote, Brown must show that the applicant ultimately hired for the position, Brian Sage, had similar or fewer qualifications than Brown. See Perdomo, 67 F.3d at 144. Brown cannot make this showing. At the time he was hired, Sage was the Controller for five districts of the country's second largest grocery wholesaler, a position comparable to division vice president of finance at Alliant—a job held by Britton, who was primarily responsible for filling the Denver position, and to whom the vice president of finance for Denver reports. In addition, Sage previously had worked as the controller for a competitor's largest district, precisely the same sort of job as the Denver position Alliant was seeking to fill. Brown, by contrast, was the manager of Alliant's forward warehouse system, a position two grades below the vice president of finance – Denver position.[1]

---

[1] Brown rejoins that the assets of the Forward Warehouse System at that time equaled those of the Houston district. The other applicant for the vice president of finance – Denver hailed from the Houston district. That fact is irrelevant, however, as the question is whether Brown was similarly situated to the person who was eventually hired – not whether she was similarly situated to unsuccessful applicants.

With respect to work experience, then, the facts establish that Sage's work experience surpassed Brown's.

Brown has failed to set forth any additional facts showing that Sage had similar or lesser qualifications than she did. Left as we are only with facts showing Sage's superior work experience, we are faced with an absence of genuine issue of material fact as to Sage's qualifications in comparison to Brown's. Nowhere in her brief does Brown argue that her qualifications exceeded Sage's, and indeed she cannot. Her inability to satisfy this element of the prima facie case is fatal to her claim of discriminatory failure to promote. Accordingly, the claim cannot survive summary judgment.

   *c. Pretext*

Even if Brown were able to establish the prima facie case for discriminatory failure to promote, she is unable to show pretext. Under the McDonnell-Douglas approach, once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. See McDonnell-Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 253. The defendant's burden, however, is not the burden of persuasion; it is sufficient that the defendant introduce admissible evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff. See Burdine, 450 U.S. at 253. Alliant contends Sage was hired rather than Britton because 1) Sage was more qualified, 2) Sage impressed Britton, Ryan and Deans during interviews, and 3) Britton, Ryan, and Deans considered Sage's experience an excellent fit with Alliant's needs. Britton's declaration in support of each of these reasons is sufficient to raise a genuine issue of

fact, and Alliant has thus successfully rebutted the presumption of discriminated. <u>See id.</u>

Because Alliant carried its burden, to avoid summary judgment Brown must introduce evidence sufficient to raise a genuine issue of material fact that Alliant's stated reasons for the alleged discriminatory reasons are pretextual. <u>See Burdine</u>, 450 U.S. at 256. She may do so by introducing evidence from which a reasonable fact finder could infer that discriminatory reasons more likely than not motivated Alliant, or by showing that Alliant's explanations are not credible. <u>See id.</u>; <u>St. Mary's Honor</u>, 509 U.S. at 511; <u>Wade v. Lerner N.Y., Inc.</u>, 243 F.3d 319, 323 (7th Cir. 2001). Because Brown offers no direct evidence indicating that Alliant was motivated by discriminatory reasons, she must establish pretext indirectly by showing that Alliant's reasons for not promoting her are 1) factually baseless; 2) not the true motivation for failing to promote her; or 3) not a sufficient basis upon which to decide not to promote her. <u>Wade</u> 243 F.3d at 323. Brown fails on all three counts.

First, while Brown introduced evidence from which a trier of fact could conclude that she was minimally qualified for the position, Sage was by all accounts more qualified. Brown does point out that Sage did not have an MBA, apparently arguing that Alliant did not sufficiently account for her education. But that is not sufficient to support an inference of pretext, because Brown has to do more than show that she favors education over work experience. <u>See Kuhn v. Ball State Univ.</u>, 78 F.3d 330, 331-332 (7th Cir. 1996); <u>Wade</u>, 243 F.3d at 325. Job qualification criteria and an employer's judgment with respect to the merit of individual applicants are precisely the kinds of employment decisions that federal courts will not reexamine. <u>See Wade</u>, 243

F.3d. at 325. As the Seventh Circuit stated in <u>Wade v. Lerner New York, Inc.</u>: "We have repeatedly held . . . that we will not sit as a "super personnel department" debating the merits of legitimate, nondiscriminatory criteria a business chooses to employ in determining which of its employees will receive promotions." <u>Id.</u> (citing <u>Debs v. Northeastern Ill. Univ.</u>, 153 F.3d 390 (7th Cir. 1998)).

Second, the only evidence Brown produces to establish that Britton, Ryan, and Deans were not impressed with Sage and did not consider his experience an excellent fit with Alliant's needs is her opinion that Deans ordered the hiring of Sage. A plaintiff cannot, however, defeat summary judgment solely by introducing evidence that a superior intervened in an employment decision affecting the plaintiff, even if such intervention was unusual. <u>See Kulumani v. Blue Cross Blue Shield Ass'n</u>, 224 F.3d 681, 684 (2000). That a superior stepped in is insufficient to defeat summary judgment; rather, the plaintiff must establish that the stated reason for hiring was designed to conceal an unlawful one. <u>See id.</u> Brown introduces no such evidence to indicate pretext. Nor does the record indicate that Britton and Ryan were unimpressed by Sage or that Britton would have hired anyone other than Sage.

In light of these considerations, Rule 56(c) mandates the entry of summary judgment in Alliant's favor with respect to Brown's claims of discriminatory failure to promote. Brown has failed to show a prima facie case for discriminatory failure to promote and, in the alternative, has not raised a genuine issue of material fact with respect to pretext. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 322-23.

*B. Brown's RIF Claims*

Brown alleges that Alliant redefined the positions of white men or transferred white men to other departments in order to retain them as employees after Alliant's RIF, whereas she was not retained because of her race and sex. Brown offers no direct evidence of intentional discrimination, so again she must rely on the McDonnell-Douglas burden shifting approach.

To establish a prima facie case of discrimination in a reduction in force/failure to transfer case, a plaintiff must present evidence that 1) she is a member of a protected class; 2) she reasonably performed her job to her employer's expectations; 3) she was subjected to an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. See Michas v. Health Cost Controls of Ill., Inc., 209 F.3d. 687, 692-93 (7th Cir. 2000); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). Brown meets the first three criteria, so the instant dispute focuses on the fourth criterion.

Brown alleges that she was similarly situated to three white males who were treated more favorably than she was: Jeff Williamson ("Williamson"), Wil Aslan ("Aslan"), and William Decoulos ("Decoulos"). In order to establish that two employees are similarly situated in a RIF/failure to transfer case, the plaintiff must show substantial similarity between herself and the better treated employee. See Radue, 219 F.3d at 618. At a minimum, a plaintiff must show that retained or transferred employees obtained the desired positions around the same time as the RIF, and that she and the retained or transferred employees had analogous attributes, experience, education, and qualifications relevant to the positions sought. See id.

Brown cannot show substantial similarity between herself and Williamson, Aslan, and Decoulos. She concedes as much in her response brief, where she writes that "although her attributes are *not exactly the same as* those of Decoulos" or Williamson or Aslan, she believes the sum of her experience, education and abilities would exceed those of these three co-workers. (Pl.'s Resp. Brf. at 10) (emphasis added). The latter part of her statement illustrates Brown's misconception of the standard governing her RIF claim. Whether the sum of her qualifications exceed those of her coworkers is not our threshold question. Rather, the threshold question is whether her attributes are similar enough to her coworkers to allow for a fair comparison. Because they are not, her claim cannot stand.

### 1. Jeff Williamson

As a result of the RIF, Williamson's position on the business integration team was eliminated. The company transferred Williams to the position of Manager of System Distribution and Processes because of his prior work experience with the company and his technical expertise.[2] Brown concedes her unawareness of the qualifications for the position to which Williams was transferred. Without this critical information, we cannot conduct a reasoned comparison of her and Williamson's relative attributes, and for that reason alone her claim must fail. Beyond that, though, from the facts before us it is evident that no genuine issue exists as to whether she and Williamson were similarly situated. It is clear that they were not. Williamson had

---

[2] Although Brown disputes this fact, her proffered reason has to do with her own perceived qualifications for the position. Nowhere does she indicate any flaw in the description of Williamson's position or the reason he was chosen. Accordingly, we admit those facts. <u>See</u> Local Rule 56.1.

prior experience on the company's business integration team; Brown had none.[3] Because Brown has not produced, at a minimum, evidence raising a genuine issue of material fact with respect to substantial similarity between herself and Williamson as far as attributes, education, experience, and qualifications for the position, she cannot establish a prima facie case for discriminatory reduction in force/failure to transfer. See Radue, 219 F.3d at 618.

### 2. Wil Aslan

Like Williamson, Aslan moved to another position after his position with Alliant's business integration team was eliminated by the RIF. Again, however, Brown is unable to raise a genuine issue of material fact with respect to the elements of a prima facie case for reduction in force/failure to transfer. While there is evidence in the record that Brown possessed analogous qualifications for the position in question—which she contends required supervision of one employee and an understanding of product management—there is no evidence in the record concerning Aslan's education. Without such evidence, we have no way to determine if Brown and Aslan had analogous educational backgrounds. In addition, the minimal record that is available reveals that Aslan possessed far greater experience than Brown. From 1988 through 1996, Aslan was controller/vice president of finance and market vice president of Alliant's Seattle district, and in 1996 and 1997, Aslan was vice president of finance for Alliant's west division. Then, in 1997 and 1998 he was vice president of pricing

---

[3] Although Brown admits as much, she claims to have had general experience in business integration. Even if this were the case, it cannot obscure the difference between having worked on Alliant's actual business integration team and not having done so.

and business development for Alliant's southwest division, and in July of 1998 he became general manager of business integration. In contrast, as of 1998 Brown had yet to achieve any position comparable to those held by Aslan as early as 1988. Consequently, Brown cannot establish a prima facie case for discriminatory reduction in force/failure to transfer because she cannot establish substantial similarity to Aslan with respect to education or experience.

### 3. *William Decoulos*

Decoulos became manager of warehouse methods and technology in 1996. In December of 1998, his position was expanded, his salary increased, and his title was changed to manager of distribution methods and technology. Brown has presented no evidence at all that she and Decoulos possessed analogous experience or qualifications for the position in question. As a result, no rational fact-finder could infer that Brown and Decoulos were similarly situated, and Brown's prima facie case fails again.

## CONCLUSION

For the foregoing reasons, we grant in its entirety Defendant Alliant's motion for summary judgment.

Charles P. Kocoras
United States District Judge

Dated: ___August 22, 2001___

- 21 -